ALFREDO MOLINA, demandante y apelante, *v.* ANTONIO ROIG, demandado y apelado.

No. 5205.—*Sometido:* Noviembre 12, 1930. *Resuelto:* Noviembre 17, 1930.

*Campos & Romero* y *S. García Díaz,* abogados del apelante; *González Fagundo & González Jr.,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Alfredo Molina demandó a Antonio Roig en cobro de

cinco mil dólares por servicios prestádosle. Alegó en su demanda los siguientes hechos:

"Primero: Que el demandante es mayor de edad y vecino de Río Piedras y el demandado es mayor de edad y vecino de Humacao.

"Segundo: Que con anterioridad al mes de septiembre de 1928, el Sr. Roig tenía el propósito de establecer una sucursal del Roig Commercial Bank, en la población de Río Piedras.

"Tercero: Que con tal fin, el domingo, 21 de octubre de 1928, en la oficina del Sr. Roig, en Humacao y en presencia del Sr. Esteban Padilla, quien antes de esa fecha, por encomienda del Sr. Roig estaba gestionando el establecimiento del dicho Banco en Río Piedras, el dicho Sr. Roig, por serle imposible al Sr. Padilla el seguir las gestiones encomendádasle, autorizó y comisionó al demandante para que gestionara lo procedente al fin indicado y se entrevistara con comerciantes y propietarios de la municipalidad de Río Piedras, para que interesara al mayor número que pudiera de las mismas, en el sentido de que prohijaran la idea de que el Sr. Roig estableciese dicho Banco en Río Piedras y para que adquirieran intereses sobre el dicho Banco.

"Cuarto: Que en virtud de dicha autorización, la cual fué confirmada por carta del Sr. Roig, y en el entendido de que los servicios que se prestaran serían pagados por el Sr. Roig y el valor de los cuales no fué convenido antes de que los mismos se prestaran, el demandante se dedicó a salir casi todas las tardes en cuanto llegaba de su oficina y por las noches todos los días laborables, todos los sábados por la tarde y las noches y los domingos durante todo el día y parte de la noche, para entrevistarse con hombres de negocios y de dinero en las poblaciones de Río Piedras y Carolina, y cambiando impresiones con ellos sobre el negocio proyectado y recabando su cooperación material e intelectual para el establecimiento del Banco de Roig en Río Piedras.

"Quinto: Que en virtud del trabajo realizado por el demandante, el demandado, Sr. Roig pudo dar amplias explicaciones sobre el negocio proyectado y manifestar cuáles eran las ventajas que ofrecía su implantación, en una reunión de caballeros de Río Piedras y Carolina, que se celebró en la morada del demandante en Río Piedras.

"Sexto: Que el demandante, a requerimientos del demandado, gestionó y consiguió un local o casa en un centro contiguo y apropiado para el establecimiento de la sucursal y oficina del Roig Commercial Bank en Río Piedras; que además consiguió para el Sr. Roig, asesores de reconocida solvencia material y moral en la comu-

nidad, con quienes se entrevistó el Sr. Roig y cuyos consejos, adver-
tencias y observaciones demostraron la conveniencia de establecer y
la seguridad del éxito que tendría la sucursal ameritada; y que como
resultado de las gestiones y actuaciones del demandante, el deman-
dado celebró un contrato de arrendamiento con opción de compra,
de la casa donde está establecido el Banco en Río Piedras, con los
dueños de la dicha casa, en virtud del cual contrato el demandado
ha derivado beneficios por valor de cinco mil dólares ($5,000).

"Séptimo: Que el demandante consiguió que muchas personas
se anotaran y comprometieran para la compra de acciones del Banco
y las que al efecto se anotaron y compraron acciones del mismo y
ofrecieron comprar más cuando el Banco estuviera en funciona-
miento.

"Octavo: Que el Banco está al presente funcionando y verifi-
cando las operaciones ordinarias y correspondientes a una institu-
ción bancaria, después de las gestiones practicadas por el deman-
dante, a requerimientos del demandado, ya enunciadas.

"Noveno: Que por la costumbre y uso frecuente del lugar, ser-
vicios como los prestados por el demandante en conexión con el esta-
blecimiento de la sucursal del Roig Commercial Bank, son compen-
sables en debida forma; y que después de haber aceptado el deman-
dado la prestación de dichos servicios y haber recibido el beneficio
de los mismos, éste, al requerirle el demandante el debido pago de
ellos, se ha negado a verificarlo.

"Que dichos servicios prestados por el demandante al demandado,
valen no menos de cinco mil dólares, ($5,000)."

Emplazado el demandado alegó la excepción previa de que
la demanda no aducía hechos suficientes para determinar una
causa de acción.

La excepción fué declarada con lugar por la corte, con
permiso al demandante para enmendar su demanda.

El demandante renunció el derecho de enmendar que se le
concedía y pidió que se dictara sentencia. La sentencia fué,
en efecto, dictada, declarando la demanda sin lugar con
costas.

No conforme el demandante interpuso el presente recurso
de apelación.

En su alegato la parte demandada y apelada sostiene que
de acuerdo con la demanda se trata de gestiones hechas por

el demandante para conseguir accionistas que suscribieran acciones del Roig Commercial Bank, del logro de un local apropiado y del establecimiento final de una sucursal del banco en Río Piedras, siendo claro que cuando la sucursal se estableció ya el banco existía y estaba incorporado, pues de acuerdo con la ley número 18 aprobada el 10 de septiembre de 1923, ningún banco puede funcionar a menos de estar incorporado de acuerdo con la misma, y sostiene además que resulta claro de dichos hechos que si el demandado requirió los servicios del demandante para instalar la sucursal, lo hizo actuando en nombre y representación del Roig Commercial Bank y no en el suyo propio, pues él no podía establecer banco alguno en Río Piedras.

A nuestro juicio no es necesario investigar si la acción debió ejercitarse contra Roig personalmente o contra el Roig Commercial Bank. Atendidos los hechos alegados, lo que resulta es que de ellos no·surge una causa de acción.

Si se considera el contrato celebrado como uno de mandato, entonces de acuerdo con el precepto terminante de la ley, debe estimarse gratuito.

"A falta de pacto en contrario, el mandato se supone gratuito," dice el artículo 1613 del Código Civil.

Lo alegado en el hecho cuarto de la demanda no puede tomarse como el pacto exigido por la ley. No basta que el demandante diga que actuó en el entendido "de que los servicios que se prestaran serían pagados por el Sr. Roig." Debió decir lo que Roig pactó. Tampoco es suficiente lo alegado en el hecho noveno en relación con la costumbre y uso frecuente ·del lugar; y era necesario· que el demandante hubiera alegado que tenía por ocupación el desempeño de servicios de la especie a que se refería el mandato, para que se presumiera, de conformidad con la segunda parte del citado artículo 1613 del Código Civil, la obligación de retribuírlo. Esa alegación no existe en la demanda.

Si el contrato se considera, según sostiene el demandante y apelante, como de prestación de servicios, entonces es aun

más necesaria la alegación de un pacto de pagar por ellos, ya que el artículo 1447 del Código Civil, de modo terminante dispone que "en el arrendamiento de obras y servicios, una de las partes se obliga a ejecutar una obra, o a prestar a la otra un servicio *por precio cierto.*" Itálicas nuestras.

En *Ortiz* v. *Mari*, 31 D.P.R. 499, que es un caso extremo en favor de un demandante que reclama el pago de sus servicios, se dijo:

"No podemos convenir con el apelante en que la contrademanda en este caso depende exclusivamente de un tanto por ciento por los servicios prestados (*cuantum meruit*). El párrafo dos de la misma alega que las partes convinieron en cierto tanto por ciento de los beneficios el cual había de fijarse más tarde entre las partes, de acuerdo con las costumbres y usos de la localidad. Estamos de acuerdo en que esto era algo indefinido, pero había un convenio específico para una compensación."

Se habla en él de los usos y costumbres del país, pero es a los efectos de considerar razonable el tanto por ciento fijado. La opinión termina así:

"De los autos en conjunto llegamos a la conclusión de que el apelado prestó los servicios más valiosos por los cuales debe considerarse que el 5 por ciento es un tipo razonable, equitativo y como declaró probado la corte inferior, está de acuerdo con los usos y costumbres del país."

En cuanto a la imposición de costas de que se queja el apelante, no habiéndose demostrado abuso de discreción por parte de la corte sentenciadora al imponerlas, no podemos alterar el pronunciamiento.

La verdad es que resulta duro que una persona que trabaja para otra en la forma expresada en la demanda, nada reciba por su trabajo, y que aun tenga que pagar las costas de su reclamación, pero la ley es tan clara que no debe llamarse a engaño sobre el particular. En el mundo de los negocios debe serse precavido, y el demandante no debió lanzarse a trabajar para el demandado en algo que no constituía su profesión, oficio u ocupación, sin pactar el precio

540

cierto que había de recibir por ello, si su intención era cobrar por sus servicios.

*Debe confirmarse la sentencia recurrida.*

El Juez Asociado Señor Texidor no intervino.